UNITED STATES BANKRUPTCY COURT          **NOT FOR PUBLICATION**
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
In re

BATAVIA NURSING HOME, LLC                 Case No. 11-13223 K

                              Debtor
-----------------------------------------------------------------    (Jointly Administered)
In re

GERIATRIC REALTY CORP.                    Case No. 11-13225 K
                              Debtor
-----------------------------------------------------------------
MELANIE L. CYGANOWSKI, Chapter 11 Trustee

                              Plaintiff
            -vs-                          AP No. 12-1145 K

JEFFREY LAPIDES
                              Defendant
-----------------------------------------------------------------


OPINION, DECISION,  AND ORDER
DENYING MOTION TO DISMISS, IN PART


Lee E. Woodard, Esq.
Harris Beach PLLC
333 West Washington Street, Suite 200
Syracuse, New York 13202

Attorney for Plaintiff

Gregory Photiadis, Esq.
Duke, Holzman, Photiadis & Gresens, LLP
1800 Main Place Tower
350 Main Street
Buffalo, NY   14202

Attorney for Defendant

William Savino, Esq.

Bernard Schenkler, Esq.
Damon Morey LLP
The Avant Building
200 Delaware Avenue, Suite 1200
Buffalo, NY   14202-2150

Attorneys for Defendant

This is "Batavia IV" - - the fourth in a series of decisions parsing the Defendant's omnibus Motion to Dismiss a $4 million Complaint that contains seventeen causes of action.  (This will be the last written decision, for now.)

This Decision focuses upon the Defendant's Rule 9(b) attack, *Twombly/Iqbal* attack, and "judicial estoppel" attack upon the causes of action that address a series of monetary distributions (apparently called "equity withdrawals" by the parties) made to the Defendant by the Debtor from December, 2006 to December, 2008, totaling approximately $ 1.8 million.  Those payments are challenged by the Trustee under each of the several fraudulent transfer provisions of the New York Debtor and Creditor Law.

To some extent the Defendant's challenge is quixotic.  As expressed by his counsel, it appears that he resents being accused of fraud.  It is unfortunate that when fraudulent transfer law was expanded (a very long time ago) to include various transfers made to persons who might have had no fraudulent intent, the label that was attached to such otherwise-innocent transfers was "constructive <u>fraud</u>."  If someone

were to petition the state legislatures and Congress suggesting another label, this

writer would wish them success.  As it is, the word "fraud" contained in the phrase

"constructive fraud" has motivated the Defendant to insist that the requirement of Rule

9(b) applies (a plaintiff must plead fraud with specificity), and also to insist that the

incantation of the words *Twombly* and *Iqbal* must cause statutory "constructive fraud"

allegations magically to disappear in the present case.

      The Court finds that although (1) a cause of action based on an

allegation of "<u>actual intent</u> to hinder, delay, or defraud" certainly may implicate Rule

9(b), and (2) there may be cases in which even "<u>constructive</u> fraud" implicates the

requirements of *Twombly/Iqbal*, this case presents none of those problems for the

Trustee.

      First the Court finds that the common law notion of "fraud" is not, in fact,

implicated when "constructive fraud" is pled.  Cases are replete to that effect.  See, for

example, *Apace vs. Burke*, 522 F.Supp. 2d 509 (W.D.N.Y. 2007) and authorities cited

therein.    Consequently, Rule 9(b) does not apply to statutory "constructive fraud"

causes of action.  The Rule <u>does</u> apply, however, to the allegation of "actual intent to

hinder, delay or defraud."   The Court has seen many cases in which fraud was

alleged in general or conclusory terms and a defendant answered that he or she had

no idea what the plaintiff was talking about.  In such cases this writer has examined

the relationship between the parties (as alleged in the complaint) and attempted to put

himself in the defendant's shoes - - "Would I know how the plaintiff got that notion that

I defrauded him or her?"  If not, then this Court typically has granted a single

opportunity to amend the complaint.  (On rare occasions that actually ends the matter

completely.[1])

               The Court has examined the Complaint and the entire record in this case

thus far and concludes that enough has been alleged as to the "actual intent" causes

of action to survive the Rule 9 attack because the Defendant must be presumed to

have been an insider,[2] and the challenged transactions are well within what this Court

will call "the substantive scope and temporal limits that need no added 'specificity.'"[3]

All of the "who," "what," "when," "where" and "how" have been pleaded.  (See, for

example, *DiLeo vs. Ernst*, 901 F.2d 624 (7th Cir. 1990).)

               Next comes the *Twombly/Iqbal* attack. It has been said that "constructive

---

[1] One such occasion involved a debtor who had been a broker at a stock brokerage.  The plaintiffs were former clients who, in a 11 U.S.C. § 523(a)(2) dischargeability complaint, asserted that the debtor defrauded them by advising stock purchases that put them at a level of risk beyond what the debtor "knew" would be acceptable to them.  Upon the debtor's Rule 9(b) motion the court gave them the opportunity to amend the complaint to provide specificity as to how he would have "known" their acceptable risk level.  For example, was that communicated to the debtor in some form of writing, or only by phone, etc?  The plaintiff did not (could not, presumably) offer specificity, and so the complaint was dismissed after the time to re-plead had passed.

[2] It was noted in an earlier decision in this Adversary Proceeding that for purposes of the present Motion, the Trustee is entitled to the inference that the Defendant was an insider at the time of the buyout. The same is true as to the time of the equity withdrawals.

[3] There are dozens of types of insider transactions that are "meat and potatoes" in bankruptcy cases. As to the "temporal" prong, there are insider transactions occurring within one year (11 U.S.C. § 547(b)), two years (11 U.S.C. § 548(a)), or six years (11 U.S.C. § 544 and the applicable statute of limitations in New York) before the filing of the petition.  As to the "substantive" prong, there are insider loan matters, insider asset transfers, corporate "distributions" other than from profits, "forgiveness" of insider obligations, assumption of obligations only for the benefit of the insider, and so on.  There are numerous ways in which disinterested trustees have shown  an intent to defraud creditors.   As to insider transactions that fall within such limits, the Court finds that Rule 9(b) has been satisfied by a disinterested trustee who specifies the approximate date, and the approximate value/amount of the transaction, plus a clear statement of the statute and theory upon which the attack proceeds.

fraud claims . . . are subject to the 'plausibility' requirement . . ." (*Apace vs. Burke*, 522 F.Supp. 2d 509 at 520).  However, the "plausibility" that a constructive fraud did occur is, essentially, "automatic" if the facts have been properly plead under N.Y. Debtor and Creditor Law §§ 273 *et seq.*, or 11 U.S.C. § 548.  That is because there is no subjective element such as wrongful intent (or other *mens rea*).  If the facts of a transaction fall within the statutory elements, the transaction is *ipso facto* avoidable. The Court thus finds, as to the constructive fraud causes of action pertaining to the equity withdrawals, that (1) the transactions have properly been identified and quantified, (2) because these were direct transfers of money to the Defendant (as opposed, for example, to some form of bestowing value or benefit upon him in an indirect manner), and because this is the Defendant's Motion to Dismiss, it must be presumed arguendo that he received the money, and (3) the element of insolvency or undercapitalization has been alleged with appropriate supporting financial analysis (in dollars and cents).  The Complaint suffers no *Twombly/Iqbal* infirmity in the stated regards.

As to the "actual fraud" cause of action arising from the equity withdrawals, the analysis of the Rule 9 and *Twombly/Iqbal* arguments become intertwined with the "judicial estoppel" argument raised by the Defendant (and rejected by this Court as to a different transaction, in an earlier decision).[4]  The Defendant has

---

[4]Part of the reason that the Court decided to address the Defendant's Motion to Dismiss in a series of successive rulings is the way in which the Defendant has structured his Motion to Dismiss. He argues that each of several hoary principles (for example, judicial estoppel, *Twombly/Iqbal*, Rule 9 pleading . . .) apply

argued that because the Chapter 11 Trustee, in an earlier stage of this Chapter 11 case and before the filing of this Adversary Proceeding, emphasized Medicaid reimbursement issues, and also mismanagement by the other 50% owner of the Debtor as principal causes of the Debtor's financial demise, both the constructive fraud causes of action, and the actual fraud cause of action, must be dismissed.  To the extent that that argument rests upon judicial estoppel, it is now rejected for the same reason that the judicial estoppel argument was rejected with regard to the $1.179 million buyout - - everything that the Trustee represented to the Court in support of the § 363 sale was amplified and expanded by the incantation of the magic words "*inter alia*" or "among other things."

Further, it is this Court's view that the doctrines emerging from the *Twombly/Iqbal* cases and from Rule 9 jurisprudence may not cross, and do not cross, the line between sufficiency of <u>notice</u> and sufficiency of <u>proof</u>.  The effort by the Defendant to dismiss certain causes of action because the Trustee failed in her Complaint to "<u>disprove</u>" every <u>other</u> possibility for the Debtor's insolvency and eventual financial demise, is rejected.

This Adversary Proceeding is restored to the calendar to be heard on

---

to every one of the Trustee's seventeen causes of action.  That approach gained the Defendant an "economy of draftsmanship."  However, it has greatly enlarged the burden on the Court in that the Defendant only has to argue his five or six theories and say that each applies to "everything" the Trustee prosecutes, but the Court must address each theory in seventeen different contexts.  Were this not a $4 million case, the Court might not have devoted so many resources to providing a clear explanation of its rulings.  Placing the burden back on the Defendant to illuminate his arguments will be addressed at the end of this decision as to any otherwise-unresolved matters raised by his Motion.

September 17, 2013 at 10:30 a.m.  Please call chambers for a call-in conference

number.  This status conference is ordered under 11 U.S.C. § 105 and Rule 16,

F.R.Civ.P.   The Court expects that before that conference, counsel will attempt to

agree upon (1) whether any other rulings from the Court are needed at this time, other

than Rule 16 scheduling,[5] and (2) suitable further scheduling.  (If this Adversary

Proceeding will go to trial, the Court is considering trial before the end of the year.)

Because the Plaintiff is a disinterested Trustee (which is to say that she

is not emotionally invested in pre-petition events of which she can have no personal

knowledge), her counsel is directed to initiate the discussion.

SO ORDERED.

Dated:        Buffalo, New York
              August 28, 2013

                                                        s/Michael J. Kaplan

                                        _____

                                                        U.S.B.J.

---

[5]Defendant's counsel shall be prepared to present a well-focused argument as to any remaining Rule 9 or Rule 12 (or other) matters.